UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRIAN SEIGFREID,

                Plaintiff,

    v.                                        Case No. 20-CV-136

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

                Defendant.

---

## DECISION AND ORDER

---

**1. Introduction**

Plaintiff Brian Seigfreid seeks disability insurance benefits, alleging he has been disabled since June 12, 2015. (Tr. 18.) He was last insured on December 31, 2015. Therefore, the period at issue is just over six months.

After his application was denied initially (Tr. 108-16) and upon reconsideration (Tr. 118-24), a hearing was held before an administrative law judge (ALJ) on February 5, 2019 (Tr. 32-69). On March 26, 2019, the ALJ issued a written decision concluding that Seigfreid was not disabled. (Tr. 13-31.) After the Appeals Council denied Seigfreid's request for review on December 17, 2019 (Tr. 1-6), he filed this action. All parties have

consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 5), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that "[t]he claimant did not engage in substantial gainful activity during the period from the alleged onset date of June 12, 2015 through the date last insured of December 31, 2015." (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Seigfreid has the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, fibromyalgia, a hip disorder, recurrent pancreatitis, migraines, depression, and an anxiety disorder." (Tr. 18.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Seigfreid has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except with additional limitations. The claimant could never climb ladders, ropes or scaffolds. He could occasionally climb ramps and stairs. He could occasionally balance, stoop, kneel, crouch and crawl. The claimant was limited to occasional overhead reaching bilaterally. The claimant was limited to occasional exposure to hazards such as unprotected heights and dangerous moving machinery. The claimant was limited to simple and routine tasks. He could maintain concentration for two-hour periods. The claimant was unable to perform fast paced production rate pace work (i.e. assembly line work) but he could perform goal oriented work. The claimant

was limited to no public interaction and occasional interaction with coworkers and supervisors.

(Tr. 20.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that, "[t]hrough the date last insured, the claimant was unable to perform any past relevant work." (Tr. 24.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" including "Document Preparer (DOT Code 249.587-018) — 41, 500 jobs; Optical Assembler (DOT Code 713.687-018) — 40,400 jobs; and Printed Circuit Board Inspector (DOT Code 726.684-110) — 28,700 jobs." (Tr. 25.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a

4
Case 2:20-cv-00136-WED   Filed 02/23/21   Page 4 of 13   Document 18

conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

**4.1. Residual Functional Capacity**

Seigfreid argues that, because the ALJ assigned little or no weight to all medical opinions assessing his physical capacities except for a consultative examiner who performed a physical work performance evaluation on July 7, 2015, he erred in concluding that Seigfreid was capable of sedentary work. (ECF No. 11 at 14.) He points out that the consultative examiner concluded that Seigfreid could *not* meet all the demands of sedentary work. (*See* Tr. 287-95.) In Seigfried's view, the ALJ impermissibly played doctor by concluding he was capable of sedentary work. (ECF No. 11 at 15.)

Because their opinions were formed without the benefit of the entire record, the ALJ reasonably discounted the opinions of the state agency consultants. (*See* Tr. 23.) He

then gave some weight to the consultative examiner's opinion, explaining that he discounted it, in part, because it reflected Seigfreid's abilities on a single day, she did not perform a comprehensive physical examination, her opinion lacked specificity in certain key regards, and she did not review other objective findings. (Tr. 23-24.) The ALJ also found the consultative examiner's opinion inconsistent with other examinations done at roughly the same time. (Tr. 24.)

These were good reasons for discounting the medical opinions. There is nothing improper about an ALJ discounting all of the medical opinions; he is not required to choose one medical opinion to adopt. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). It is the ALJ's responsibility to resolve conflicts in the evidence, and as such the ALJ's RFC finding might not coincide with any one medical source's opinion. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Ultimately, it is the ALJ's responsibility to determine the claimant's RFC. 20 C.F.R. § 404.1527(d)(2). Although determining the claimant's RFC requires evaluating the entire record, including medical evidence, *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007), that does not mean the ALJ impermissibly "plays doctor" when he does so. *See Pflughoeft v. Saul*, No. 19-CV-1548, 2020 U.S. Dist. LEXIS 211269, at *13 (E.D. Wis. Nov. 12, 2020). He is merely performing the routine and required work of an ALJ. Seigfreid has not shown the ALJ erred in the weight he gave any specific medical opinion or the medical opinions overall.

The ALJ did not impermissibly "ignore [an] entire line[] of contrary evidence" when he "only briefly addressed" hip surgery that Seigfreid had nearly two years after his date last insured. (ECF No. 11 at 16.) As Seigfreid acknowledges, the ALJ explicitly mentioned the hip surgery. That he did so only briefly was not error; Seigfreid has not demonstrated that this evidence merited more than a brief mention. The fact that Seigfreid had surgery after his date last insured is not "a clear indicator that his hip disease had progressed farther than the ALJ admitted" (ECF No. 11 at 16), as Seigfreid argues. Subsequent surgery does not necessarily show the severity of his impairments during the relevant period. The ALJ reasonably concluded that Seigfreid's condition deteriorated following the date last insured, thus requiring surgery, in part because imaging done "well after the date last insured" showed deterioration greater than that reflected in earlier imaging. (Tr. 22.) Seigfreid has not shown that, in considering his hip surgery, the ALJ committed an error requiring remand. The ALJ's RFC finding was not based on an error of law, and it was supported by substantial evidence.

Seigfreid's arguments then shift to the ALJ's assessment of Seigfreid's symptoms, although he does not reference SSR 16-3p. In support of his conclusion that Seigfreid's symptoms were not as severe as alleged, the ALJ noted that on May 2, 2015, Seigfreid reported moving boxes, furniture, painting a deck, and fishing. (ECF No. 11 at 16 (citing Tr. 22, 24).) Seigfreid argues that the ALJ erred because he did not acknowledge that this activity resulted in him shortly thereafter going to the emergency room with severe pain

that lasted for six hours. (ECF No. 11 at 16 (citing Tr. 326).) But the ALJ *did* explicitly mention this fact. (Tr. 22.) More importantly, the fact that Seigfreid suffered severe pain as a result of these activities does not negate the probative value of the activities relative to the severity of Seigfreid's symptoms. As the ALJ noted, what was significant was that Seigfreid obviously believed he was well enough to attempt these activities at all. (Tr. 24.) The ALJ could reasonably conclude that merely attempting these strenuous activities suggested that Seigfreid's claims of persistent pain were not as severe as he alleged. In no way was the ALJ suggesting that Seigfreid's activities on a single day reflected his abilities on a sustained, full-time basis, as Seigfreid argues. (ECF No. 11 at 16-17.)

In sum, Seigfreid has not shown that the ALJ erred in his assessment of the severity of Seigfreid's symptoms or his physical RFC.

**4.2. Mental Impairments**

Seigfreid argues that the ALJ also erred in the weight he gave the opinions of treating psychiatrist Dr. Egbert Tan and therapist Jody Ossi. (ECF No. 11 at 17.)

On January 5, 2017, Jody Ossi, Seigfreid's therapist, completed a Mental Medical Source Statement. (Tr. 469.) Two days later, Dr. Tan added his signature to the form below Ossi's. (Tr. 469.) About six months later Dr. Tan and Ossi completed another Mental Medical Source Statement, this time with Tan signing on the preprinted space on the form and Ossi signing below. (Tr. 601.)

The ALJ explained that he gave these opinions little weight because they

> were written well after the date last insured and appear to have been prepared by Jody Ossie [sic], LPC, with Egbert Tan, M.D., then merely signing off. Furthermore, the significant degree of limitations opined to would not be consistent with the GAF scores provided. Finally, while the treatment records confirm the claimant's complaints of symptoms and periodic medication changes, they do not document need for more aggressive mental health treatment including psychiatric hospitalization or participation in an intensive outpatient program.

(Tr. 24.) Seigfreid argues that the opinions are contrary to substantial evidence. (ECF No. 11 at 17.)

A physician who has treated the claimant will generally be more familiar with the claimant's conditions and limitations. Therefore, a treating physician's opinion is generally entitled to greater weight than that of a non-treating physician. *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). "[A] 'treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.'" *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(d)(2).

The court will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)). The ALJ provided good reasons for not giving Dr. Tan's opinion controlling weight. For example, the ALJ appropriately relied on a perceived inconsistency between Dr. Tan's opinion and other evidence. Dr. Tan opined that Seigfreid suffered many severe limitations, but the ALJ

reasonably concluded that such severe limitations were inconsistent with the absence of more intensive treatment and Seigfreid's GAF scores.

"The GAF scale measures a 'clinician's judgment of the individual's overall level of functioning.'" *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision 32 (2000)). While Seigfreid is correct that a GAF score is not determinative of disability, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("the score does not reflect the clinician's opinion of functional capacity"), it may be relevant in assessing the internal consistency of a treating source's opinion. On both forms Dr. Tan stated that Seigfreid's highest GAF score over the past year was 55 and his current GAF score as 52 in January 2017 and 55 six months later. These levels are consistent with moderate limitations. Nonetheless, seemingly inconsistently, Dr. Tan's opinions reflected severe limitations.

However, merely because the ALJ reasonably concluded that Dr. Tan's opinions were not entitled to controlling weight does not mean that the ALJ did not err in assessing the weight to give Dr. Tan and Ossi's opinions. "When an ALJ does not give a treating source's opinion controlling weight, then that opinion should be weighed based on the nature and extent of the treatment, the treating source's area of specialty, and the degree to which the opinion is consistent with the record and supported by evidence." *Vang v.*

*Saul*, 805 F. App'x 398, 401 (7th Cir. 2020) (citing 20 C.F.R. § 404.1527(c); *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018)).

To the extent that the ALJ's observation that Dr. Tan "merely sign[ed] off" on Ossi's opinion suggests a basis for discounting Dr. Tan's opinions, it does not. Regardless of who completed the forms, Dr. Tan's signature reflects an endorsement of the opinions contained therein. All kinds of professionals including, notably, ALJs adjudicating social security appeals, *see* HALLEX I-2-8-20, available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-20.html, may rely on subordinates to draft decisions that reflect the professional's findings. The Commissioner has not shown that an ALJ may appropriately discount an opinion endorsed by a treating physician simply because that opinion is expressed in a form completed by someone other than the physician.

But any error such does not merit remand if the ALJ otherwise provided an adequate basis for discounting the Dr. Tan and Ossi's opinions. As noted above, the perceived inconsistency between Seigfreid's GAF scores and the limitations reflected in the opinions is an appropriate consideration in determining how much weight to give the opinions. *See* 20 C.F.R. § 404.1527(c)(4).

The ALJ also appropriately noted the absence of hospitalizations or participation in intensive outpatient therapy. If such treatment had been present, it would tend to corroborate Dr. Tan and Ossi's opinions as to the severity of Seigfreid's impairments. But

the absence of such treatment, while relevant, is only minimally probative. The absence of hospitalizations or intensive outpatient treatment is not necessarily inconsistent with the limitations found by Dr. Tan and Ossi.

Most significant in the ALJ's assessment appears to have been the fact that Dr. Tan and Ossi's opinions came roughly 12 and 18 months after the relevant period ended. An ALJ may appropriately discount an opinion on the basis that it does not reflect the claimant's condition during the relevant period. However, simply because the treating source offered the opinion after the relevant period does not necessarily mean that the opinion does not reflect the claimant's condition during the relevant period.

Dr. Tan and Ossi's opinions are generally devoid of any indication as to the period to which they apply. The ALJ likely could have contacted Dr. Tan and Ossi for clarification of their opinions, although he was not required to do so. *See* 20 C.F.R. § 404.1520b. But having failed to resolve this ambiguity, it is simply speculation to say that the opinions expressed in the forms by Dr. Tan and Ossi do not reflect Seigfreid's abilities during the relevant period. Dr. Tan and Ossi treated Seigfreid's before, during, and after the relevant period, and their treatment notes do not indicate any deterioration in his condition following the relevant period which might support the inference that the severe limitations reflected in their opinions were not present during the relevant period.

Although the ALJ provided some good reasons for discounting Dr. Tan and Ossi's opinions, taken together those reasons were insufficient to support his conclusion that

the opinions should be given little weight. Absent from the ALJ's discussion was any indication that he considered the fact that both Dr. Tan and Ossi had a lengthy and regular treating relationship with Seigfreid, *see* 20 C.F.R. § 404.1527(c)(2)(i) and (ii), whether and to what extent their treatment notes supported their opinions, *see* 20 C.F.R. § 404.1527(c)(4), and the fact that both were mental health specialists, *see* 20 C.F.R. § 404.1527(c)(5). While an ALJ need only "minimally articulate" his reasoning for the weight to afford a treating source, *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)), the ALJ's analysis fell short of this standard. The reasons he gave were either irrelevant or of marginal probity. Therefore, remand is required.

5. **Conclusion**

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of February, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge